___

**SO ORDERED,**



*Selene D. Maddox* (signature)

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: SYLVESTER AND ADRIANE CANNON | CASE NO.: 20-13025-SDM |
| DEBTORS | CHAPTER 13 |

## OPINION AND ORDER DENYING MOTION TO MODIFY PLAN TO RECLASSIFY STUDENT LOAN CLAIMS

With over a year remaining in their Chapter 13 bankruptcy case, the Debtors, Sylvester and Adriane Cannon (the "Cannons"), are attempting to modify their confirmed Chapter 13 Plan (the "Plan") to exclude the nonpriority, unsecured, and nondischargeable student loan Creditors (the "Student Loan Creditors") from receiving further distributions under the Plan, including distribution of proceeds from a personal injury settlement, creating a separate classification for their student loan claims (the "Student Loan Claims"). See *Motion to Modify*, Dkt. #137. The Chapter 13 Trustee objects on the basis that permitting a separate classification at this juncture is not permitted under the Bankruptcy Code and would unfairly discriminate against the Student Loan Creditors, among other reasons discussed more below. After a thorough review of the relevant law, and after considering the parties' arguments made at the hearings and in their briefing, the Court finds that the Cannons have not articulated sufficient cause to change the

classification of the Student Loan Claims. Because the Student Loan Claims must remain in the same class as the other general, unsecured Creditors, and the Bankruptcy Code prohibits treating creditors of the same class unequally, the Cannons' request to modify their Plan should be denied.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. §157(a). This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (allowance or disallowance of claims against the estate), and (O) (other proceedings affecting the liquidation of assets of the estate or adjustment of the debtor-creditor relationship).

## II. BACKGROUND

At the time the Cannons filed their bankruptcy case in October of 2020, the Cannons' Schedule E/F listed several student loan claims, including the Department of Education/ECMC, Navient, and the U.S. Department of Education/ECMC. (Dkt. #1). The Student Loan Creditors all filed claims: Navient Solutions, LLC filed its claims, POC #s 8-1, 9-1, ECMC filed its claim, POC #10-2, and the U.S. Department of Education filed its claim, POC #21-1 (the "Student Loan Claims"). The Student Loan Claims total $84,177.00. This Court confirmed the Cannons' Plan on April 23, 2021, which provided that unsecured nonpriority claims would be paid approximately $12,000.00 on a *pro rata* basis. See Dkt. #66. As the Trustee points out, the Cannons did not separately classify their Student Loan Claims in Section 5.2 of the Plan at confirmation.

As of the date of the parties' initial briefing, the unsecured claims filed in the Cannons' bankruptcy case totaled $104,580.54, with unsecured Creditors set to receive $11,995.39 or

Page 2 of 19

11.47%.[1] But due to a personal injury settlement obtained on behalf of the joint Debtor, Adriane Cannon, in the amount of $82,988.15, the Trustee currently has in her possession an additional $54,960.97 in net settlement proceeds to disburse to Creditors.[2] Prior to any disbursement, the Cannons filed two separate modification motions. The first modification motion sought to defer their student loans until completion of their Plan. Dkt. #133. The Trustee filed her *Response to the Motion to Modify Plan* (Dkt. #135), arguing that the Court does not have jurisdiction to place the Student Loan Claims in deferment, and any modification is beyond the scope of 11 U.S.C. § 1329(a)[3], the Bankruptcy Code section outlining the circumstances in which any postconfirmation plan modification would be permissible. The Court denied that modification request, finding no basis in the Bankruptcy Code or otherwise to defer the Cannons' student loan payments until after discharge. *Order Denying Motion to Modify Plan*, Dkt. #173.

Even before the Court could rule on the first modification motion, the Cannons filed the instant Motion to Modify seeking to separately classify the Student Loan Claims—effectively prohibiting the Student Loan Creditors from receiving any settlement proceeds. The Trustee filed her *Response to the 2nd Motion to Modify Plan* (Dkt. #151), arguing separate classification of the Student Loan Claims is not permissible under § 1322(b)(1)'s unfair discrimination standard, and, as argued above as to the first modification attempt, the modification the Cannons propose is beyond the scope of § 1329(a). At the initial hearing on both modification motions, the Court

---

[1] According to the Trustee, as of the date of the initial hearing, the Trustee had disbursed a total of $6,594.78 to unsecured Creditors. Of note, the Trustee did not produce any records regarding disbursements or calculations, and the Court did not admit any documents in evidence. Any information used in this Opinion and Order regarding disbursements is being gleaned from the parties' briefs.

[2] The Court approved the *Application to Compromise Controversy* (Dkt. #124) in its *Agreed Order Approving Application to Compromise Controversy*. See Dkt. #147.

[3] The Court will refer to Title 11 of the United States Code for any later statutory references unless it notes otherwise.

entertained arguments by counsel for the Trustee and the Cannons, which will be discussed more below in the context of the parties' briefing. In addition, the Cannons proffered their testimony to shed light on the facts surrounding their student loans and careers in education. Specifically, the Cannons testified that they began taking out student loans to cover their tuition and cost of education in the 1990s. Sylvester Cannon ultimately obtained his doctorate degree while Adriane Cannon obtained her master's degree. The Cannons have been educators—either in administration or the classroom—over the last 20 years, but neither of them have made the necessary 120 qualifying payments while being employed in public service full time to qualify for the Public Service Loan Forgiveness ("PSLF").[4] Nevertheless, the Cannons testified they anticipate receiving student loan forgiveness under PSLF in the future as soon as they qualify.

In the weeks following the hearing, the parties submitted briefing at the Court's request. The Trustee argues that the proposed modification of the Cannons' Plan should not be permitted because it violates the unfair discrimination prohibition under § 1322(b)(1), does not fall within one of the permissible purposes for postconfirmation modification under § 1329(a), and is barred by the preclusive or binding effect of the Cannons' confirmed Plan, which did not provide for a separate treatment for Student Loan Claims. On the other hand, the Cannons argue that their proposed modification to separately classify their Student Loan Claims is permissible and equitable under the Bankruptcy Code, does not unfairly discriminate against the general unsecured Creditors as they will be paid in full and the Student Loan Creditors will be paid according to their original contract, and depriving the Cannons the benefit of eventual forgiveness under PSLF would

---

[4] The PSLF is a government program that allows individuals who have made 120 qualifying monthly payments while working for a qualifying employer to have the remaining balance of their direct loans forgiven. FEDERAL STUDENT AID, Studentaid.gov/manage-loans/forgiveness-cancellation/public-service (last visited Nov. 6, 2024).

be inequitable—especially considering the Student Loan Creditors did not object to the proposed modification.

Prior to issuing its ruling on this Motion to Modify, the Court requested and conducted a status hearing on August 26, 2024. During the status hearing, the parties agreed that even further briefing was required regarding the applicability of § 1325(b)(4)(B) [5] considering the proposed modification. The parties submitted those simultaneous briefs on September 18, 2024 at which time the Court officially took the legal issues in the instant Motion to Modify under advisement. In that briefing, the Cannons argue that § 1325(b)(4)(B) permits shortening the Cannons' Plan period because reclassifying the Student Loan Claims would result in no further distributions to the Student Loan Creditors under the Plan and payment in full of all allowed unsecured claims. While the Trustee referenced the applicable 60-month commitment period, the Trustee mainly reasserted her arguments that separately classifying the Student Loan Claims would result in unfair discrimination against the Student Loan Creditors and would neither be in the Cannons', nor the Creditors', best interests.[6]

---

[5] Section 1325(b)(4)(B) provides that the commitment period may be less than three or five years, whichever is applicable only if the plan provides for full payment of all unsecured claims. 11 U.S.C. § 1325(b)(4)(B).

[6] The Trustee also provided information to the Court regarding the potential disbursement depending on how the Court rules on the Cannons' modification attempt. According to the Trustee, disbursement of the settlement proceeds would be as follows if the Court were to grant the Motion to Modify: unsecured Creditors (but not the Student Loan Creditors) would collectively receive the sum of $18,874.34 (100%) and Regions Bank, a secured Creditor, would receive $13,672.87. Including the Trustee's statutory compensation, $34,997.00 would be paid from the settlement proceeds to those Creditors, leaving $19,909.67 for the Cannons. Should the Court deny the Cannons' Motion to Modify, and the settlement proceeds were disbursed as under the confirmed Plan, the Student Loan Creditors would receive disbursements as all other unsecured Creditors. Further, no payments would be made to secured Creditors from the settlement proceeds, and the Plan would obviously not be complete. While the Court agrees with that portion of the latter scenario, the Court is unsure of the next representation by the Trustee. Specifically, the Trustee claims that the Student Loan Creditors would receive approximately $41,120.97 (52.92%), while the other unsecured Creditors would receive approximately $18,870.84 (99.98%) should the Court

### III. DISCUSSION

The Court will attempt to address each relevant argument advanced by the parties at any hearing and in their respective briefs. To begin, the Bankruptcy Code permits postconfirmation modifications of a plan under § 1329, which provides that a trustee, debtor, or unsecured creditor may move to modify a confirmed plan prior to completion of plan payments. 11 U.S.C. § 1329(a). Section 1329 contains three essential requirements for modification, only two of which are applicable here. *In re Scarver*, 555 B.R. 822, 827 (Bankr. M.D. Ala. 2016). The first is that a modification must comply with § 1329(a), which permits modification to adjust payment amounts, change the payment schedule, alter distribution amounts, and reduce plan payments for health insurance costs. 11 U.S.C. § 1329(a)(1)-(4). Second, the modification must meet the requirements for plan confirmation as established in §§ 1322(a) and 1325(a) and should treat claims as permitted by §§ 1322(b)(2) and 1323(c). 11 U.S.C. § 1329(b)(1).[7] The burden of proof lies with the party seeking the modification. *In re Anderson*, 545 B.R. 174, 176 (Bankr. N.D. Miss. 2015).

---

not permit the modification. If those calculations are correct, mainly that the unsecured Creditors apart from the Student Loan Creditors would receive almost 100% payment on their claims regardless of the proposed modification, the Court does not see any discernable benefit to the bankruptcy estate as proposed in the Cannons' Motion to Modify according to the disbursements proposed by the Trustee in her briefing. See Dkt. #177, n. 4. But the Court does not see how the Trustee is arriving at the almost 100% distribution to unsecured Creditors outside of the Student Loan Creditors if the Court allowed the Cannons' proposed modification. Common sense dictates that the general unsecured Creditors could not receive almost 100% of their claims if the Court were to grant the Motion to Modify as the total proposed distribution to be paid is $59,991.81, which exceeds the actual balance of the settlement proceeds of approximately $54,960.00. It appears to this Court after deducting the amounts necessary to pay the Trustee's compensation, the Student Loan Creditors would receive approximately $40,890.00 and the rest of the general unsecured Creditors would receive approximately $10,233.00. Regardless of how much the general unsecured Creditors would or would not receive, that is not a factor in the Court's "cause" analysis below under § 502(j).

[7] The last requirement for modification is that the modification cannot extend the payment period beyond five years after the first plan payment became due and cannot extend the original commitment period of a debtor's disposable income absent cause. 11 U.S.C. § 1329(c). This is not

**A. Claim preclusion does not prohibit the Cannons from modifying their Plan.**

The Court must first address the Trustee's contention that the Cannons' Plan, which did not originally provide for separate treatment of the Student Loan Claims even though it could have based on the Cannons' potential eligibility under PSLF, is binding on all parties and bars the Cannons from raising the issue now under the doctrine of "res judicata" (or claim preclusion).[8] This discussion, however, will be brief. As the Cannons correctly point out, this issue has already been addressed by another court in the Northern District, specifically Judge Jason D. Woodard in *Anderson* cited above.

There, the debtors' confirmed Chapter 13 plan included retaining a vehicle and making monthly payments to the lienholder. *Anderson*, 545 B.R. at 175-76. Four years later, the debtors filed a motion seeking to modify the plan by surrendering the vehicle in full satisfaction of the creditor's claim and discontinuing further payments because the vehicle had developed a transmission problem, making it less practical for the debtors to retain it. *Id.* at 176. The creditor objected to the proposed modification, arguing that while postconfirmation modifications were not "categorically barred", the debtors were required to show a substantial, unforeseeable change in circumstances to justify the modification and the modification must be made in good faith. *Id.*

---

applicable based on the Cannons' proposed modification, and the Court need not discuss this Bankruptcy Code provision any further.

[8] As the Fifth Circuit has noted, a "true" claim preclusion argument is an affirmative defense that bars the litigation of claims that have been or should have been raised in an earlier suit. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016). Claim preclusion has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.* Here, even though the Trustee argues that all the elements of claim preclusion are met, the Court need not expound on the elements of claim preclusion at common law or otherwise due to its inapplicability to postconfirmation plan modifications under § 1329.

The court recognized that the Fifth Circuit, like several other circuits, does not require debtors to prove a change in circumstances to modify a confirmed plan. *Id.* at 177 (citing *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877-78 (5th Cir. 2006)). According to the court in *Anderson*, this view contrasts with other courts that have imposed such a requirement based on claim preclusion, i.e., because of the binding nature of a confirmation order, to modify a plan postconfirmation, debtors must show changed circumstances. *Id.* at 176. The court also emphasized that § 1329 provides debtors with an "absolute right to seek a modification," and claim preclusion does not bar such modifications as it would render § 1329 "meaningless". *Id.* at 177. Instead, §§ 1327[9] and 1329 are designed to work together harmoniously, allowing the debtor to modify the plan at any time after confirmation but before the completion of payments. *Id.* Moreover, the court noted that if Congress intended to impose a "change in circumstances" requirement for post confirmation modifications, it would have explicitly included such language in § 1329, like the requirement found in § 1328(b) for a hardship discharge. *Id.*

Despite the factual and legal differences present in this bankruptcy case, the Court finds *Anderson* instructive. While the court in *Anderson* was faced with a reclassification of a secured claim, the fact remains that claim preclusion cannot serve as a basis to prohibit the Cannons from modifying their Plan—regardless of the underlying reasons for the modification request. Indeed, the Cannons may very well have proposed a separate classification for the Student Loan Claims at confirmation due to their future eligibility for PSLF, but because § 1329 imposes no requirement

---

[9] Section 1327 provides the "effect of confirmation" of a plan, in that a confirmed plan binds the debtor and creditors regardless of whether a creditor's claim is provided for in the plan or whether a creditor agrees or disagrees with the plan. 11 U.S.C. § 1327(a). As noted by the court in *Anderson*, § 1327 does not limit permitted modifications of a confirmed plan, and only binds the debtor and all creditors unless and until it is modified, at which time the modified plan becomes the plan under § 1329(b)(2). *Id.* (citing *In re Jock*, 95 B.R. 75, 77 (Bankr. M.D. Tenn. 1989).

for the factual circumstances to change prior to modification, the Cannons are not prohibited from modifying their Plan based on the doctrine of claim preclusion.

### B. The Cannons cannot modify their Plan under § 1329(a).

While claim preclusion is not an obstacle for the Cannons' modification attempt, the Cannons' proposed modification under § 1329(a) does not meet the requirements of § 1322(a)—a limiting provision to § 1329(a). To begin, the Court notes that § 1329(a) does not prohibit anything. In fact, the provision permits types of modifications. *In re Fayson*, 573 B.R. 531, 534 (Bankr. D. Del. 2017). Sections 1322(a) and (b) and §§ 1323(c) and 1325(a) are the appropriate sources of limits on modification under § 1329. See *In re Anderson*, 545 B.R. 174, 177 (Bankr. N.D. Miss. 2015) (citing *In re Jock*, 95 B.R. 75, 77 (Bankr. M.D. Tenn. 1989)). Nevertheless, § 1329(a) provides three circumstances arguably relevant here which permit a debtor to modify a plan. The first relates to adjusting payment amounts, i.e., the debtor can increase or decrease the "amount of payments on claims of a particular class" provided for in a plan. 11 U.S.C. § 1329(a)(1).

The second situation allows modification where a debtor seeks to extend or reduce the time for "such" payments. 11 U.S.C. § 1329(a)(2). The third situation involves altering distribution amounts, where a debtor may modify the amount distributed to creditors to account for payments made outside the plan. 11 U.S.C. § 1329(a)(3). These provisions allow flexibility in adjusting a confirmed plan to accommodate changes in a debtor's financial situation during the life of the plan. *In re Anderson*, 545 B.R. 174, 176 (Bankr. N.D. Miss. 2015) (citing *Meza*, 467 F.3d at 877).

Even though § 1329(a) is meant to allow debtors flexibility, the Trustee argues that the Cannons do not carry their burden as to any of these circumstances because the Cannons proposed modification seeks to create a new class of claims—the Student Loan Claims—that did not exist in the confirmed Plan. In other words, the Trustee argues that because the class of Student Loan

Claims is not provided for in the Plan, modifying their Plan to decrease payments to this non-existent class is not permitted under § 1329(a)(1). Further, the Trustee submits that the Cannons are not requesting for payments to be made to the Student Loan Creditors from a source other than what is provided in the confirmed Plan, so the Cannons do not meet § 1329(a)(3) either.[10] The Court will endeavor to discuss all the relevant modification provisions of § 1329(a) that could apply to the Cannons' proposed modification. To an extent, and as will be explained below, the Court agrees with the Trustee's arguments, and because the Court believes § 1329(a)(1) to be the most applicable to the facts as presented in this case, it will begin there.

   1. *§ 1329(a)(1)*

Practically speaking, modification typically occurs under § 1329(a)(1) where debtors can no longer afford to pay their plan payments and seek to reduce their payments or where additional income or nonexempt property may necessitate an increased distribution to unsecured creditors. Indeed, § 1329(a)(1) allows a plan to be modified to increase or reduce the amount of payments on *claims of a particular class* provided for by the plan. 11 U.S.C. §1329(a)(1) (emphasis added). Here, the Cannons are seeking to increase distribution amounts paid on all unsecured claims other than the Student Loan Claims, which means they are not seeking to increase or reduce on all claims of a particular class. Instead, as the Trustee argues, the Cannons are attempting to increase the amount paid on *some* claims within the class and reduce the amount to others. Increasing the payments for only some of the claims within a particular class clearly exceeds the bounds of the Bankruptcy Code because § 1322(a)(3) requires that all claims within the same class receive equal

---

[10] As the Trustee acknowledges and the Court agrees, the Cannons are not purposing to reduce the amount to be paid under the Plan by the actual amount paid by the Cannons for the purchase of insurance under § 1329(a)(4). Because the Cannons have not sought modification under § 1329(a)(4), the Court will not discuss it any further.

treatment. *Public Finance Corp. v. Freeman*, 712 F.2d 219, 22 (5th Cir. 1983); 11 U.S.C. § 1322(a)(3); COLLIER ON BANKRUPTCY ¶ 1322.04 16th ed.

Faced with this prohibition, the Cannons are attempting a workaround by separately classifying the Student Loan Claims. If the Court were to permit the reclassification of the Student Loan Claims, the payment in full of all other unsecured claims could constitute an increase in the amount paid to claims of a particular class, i.e., the general unsecured Creditors, and likely fall under the purview of § 1329(a)(1). As the Cannons argue (and the Court agrees), separate classification of unsecured claims is permitted, but only if the treatment complies with the prohibition on unfair discrimination found in § 1322(b)(1). While § 1122 allows a plan to place "substantially similar claims within the same class", it does not require it. *In re Idearc Inc.*, 423 B.R. 138, 160 (Bankr. N.D. Tex. 2009). Likewise, § 1322(b)(5) allows debtors to separately classify unsecured claims on which the last payment is due after the date on which the final plan payment is due, as is the case with the student loans. 11 U.S.C. § 1322(B)(5); *In re Durand Day*, 2022 WL 14938726 *2 (Bankr. N.D. Tex. 2022).

The Cannons would have been able to at least propose separate classification of the Student Loan Claims at confirmation, subject only to the prohibition of unfair discrimination as mentioned above. But at the modification stage, the Court must also consider additional provisions of the Bankruptcy Code, and the Court must now determine whether it may "reclassify"[11] the Student Loan Claims so that increasing the amount paid to the general unsecured Creditors, but not the Student Loan Creditors, does not violate § 1322(a)(3)'s requirement that all claims within a class

---

[11] Merriam-Webster defines reclassify as follows: to move from one class, classification, or category to another. *Reclassify*, Meriam-Webster's Dictionary (11th ed. 2003).

receive the same treatment. To that end, the Cannons argue § 502(j) permits the proposed modification attempt.

While § 502(j) allows an allowed or disallowed claim to be reconsidered for cause, courts are split as to whether § 502(j) can be used to reclassify a claim postconfirmation. Compare *In re Tucker*, 500 B.R. 457, 464 (Bankr. N.D. Miss. 2013) (stating that debtors may modify plans and reclassify a deficiency claim as unsecured using § 502(j)), with *In re Nolan,* 232 F.3d 528, 535 (6th Cir. 2000) (holding that a claim cannot be reclassified at modification). While courts have utilized § 502(j) as a tool for reclassification, those courts have only applied § 502(j) in the context of surrendering collateral and reclassifying any deficiency as an unsecured claim under §§ 1329(a)(1) or (a)(3). See *Tucker, 500 B.R. at* 461. In *Tucker*, the court reasoned that §§ 1329(a)(1) and (a)(3) provide for modifications that alter the payment of a claim by eliminating the payments to the secured creditor, implicating §§ 1329(a)(1) and (a)(3), in conjunction with § 506, which provides that a secured creditor's claim may be partially unsecured. *Id*. When relying on § 502(j) to permit reclassifying of secured claims, courts like *Tucker* have concluded that a court's power to reconsider a claim enables a debtor to modify his or her confirmed plan to surrender collateral and reclassify a creditor's claim under § 1329. *Id*. This ability is restricted, however, by the requirement of a showing of cause and consideration of the equities of the case before a claim is reconsidered under § 502(j). 11 U.S.C. § 502(j).

As mentioned above, courts in the Fifth Circuit have held that § 1329 and § 502(j) allow for modifications to surrender collateral and reclassify any deficiency as an unsecured claim. *Tucker*, 500 B.R. at 460. But after review, and aside from § 502(j)'s statutory language, the Court has not found any case law or precedent where § 502(j) has been used to reclassify wholly unsecured claims. Even so, to the extent that it may apply, the Court will address the Cannons

argument that § 502(j) allows the reclassification of the Student Loan Claims. Assuming it is applicable, a prerequisite to reconsider a claim under § 502(j) is the existence of "cause". 11 U.S.C. § 502(j). In addition to cause, the equities of the case must also support reconsideration. *In re Anderson*, 545 B.R. 174, 180 (Bankr. N.D. Miss. 2015).

Because "cause" is a prerequisite to reconsideration, the first inquiry must be whether cause exists. *In re Coffman*, 271 B.R. 492, 497 (Bankr. N.D. Tex. 2002). The Bankruptcy Code does not define "cause", but the Fifth Circuit has held that the § 502(j)-cause standard is like the cause standard in Rule 60(b) of the Federal Rules of Civil Procedure made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure. See *Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987). Rule 60(b) provides that "cause" exists for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged or enforcement is no longer equitable; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b).

Before applying the Rule 60(b) "cause" standard in this case, in situations where courts have analyzed the "cause" standard using § 502(j) to reclassify a deficiency claim as unsecured, courts have reasoned that surrender of the collateral securing the original claim is expressly permitted by §§ 1329(a)(1) and (a)(3). *Tucker*, 500 B.R. at 461. Once a debtor has surrendered collateral, § 506 allows any deficiency to become an unsecured claim since a secured creditor's claim is only a secured claim to the extent of the estate's interest in that collateral. *Id.* at 462; 11 U.S.C. § 506. Thus, by operation of law, a creditor cannot have a claim secured by collateral which is no longer in the debtor's possession, creating cause under Rule 60(b)(6) to reconsider and reclassify any deficiency using § 502(j). *Anderson,* 545 B.R. at 183.

Although the courts have found "cause" to reclassify secured claims under Rule 60(b)(6), the Cannons seek relief wholly on equitable grounds, which implicates both Rules 60(b)(5) and (b)(6). As to Rule 60(b)(5), relief is only provided when it is no longer equitable, not when it is no longer convenient to live with the terms of the judgment. *Exchange Commission v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022) (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)). Further, Rule 60(b)(5) requires a change in factual conditions or the law. *Anderson v. City of New Orleans*, 38 F.4th 472, 479 (5th Cir. 2022). The movant bears the burden to show it is no longer equitable. *Novinger*, 40 F.4th at 307. As to Rule 60(b)(6), the Fifth Circuit has held that relief should only be granted if extraordinary circumstances are present. *Hesling v. CSX Transp., Inc.,* 396 F.3d 632, 642 (5th Cir. 2005).

To support their argument under Rules 60(b)(5) or (b)(6), the Cannons assert that it would be unjust or unequitable to allow the Student Loan Creditors to receive further distributions under the Plan due solely to the Cannons' potential future eligibility of loan forgiveness under PSLF. While the Court understands and appreciates that the Cannons have devoted their careers to public service, it does not believe the mere possibility of student loan forgiveness in the future outweighs prohibiting the Student Loan Creditors from receiving nonexempt settlement proceeds while the other general unsecured Creditors are paid in full. Further, just because the Student Loan Creditors failed to file any response or objection to the Motion to Modify, that alone does not change the reality that the Cannons may very well never qualify for student loan forgiveness.

Even more, unlike the cases[12] in which § 502(j) has been used to permit the surrender of collateral and reclassification of secured claims by relying on the operation of § 506 to find cause

---

[12] See *Tucker*, 500 B.R. at 461 (finding that § 1329 in conjunction with § 506(a) allows modification); *In re Owens*, 2019 WL 9828473 at *5 (Bankr. S.D. Miss. 2019) (stating that surrender of the collateral is cause to reconsider and reclassify); and *In re Anderson*, 545 B.R. 174,

under Rule 60(b)(6), the facts in this case are simply different. Here, the Cannons seek to reclassify wholly unsecured claims where they substantially benefit to the tune of approximately $19,000.00 while the Student Loan Creditors receive nothing. The Court believes that finding cause in this situation under Rule 60(b)(6) would also be a step too far as the potential for future loan forgiveness does not create extraordinary circumstances that justify relief like the surrender of collateral cases cited above. Regarding either Rule 60(b)(5) or (b)(6), the Court notes that had the Cannons already qualified for forgiveness under PSLF, the result may be different.

Simply put, the Cannons have failed to establish cause exists to reconsider and reclassify the Student Loan Claims. While the Court does not believe cause exists in the current situation, it does not intend this ruling to convey that cause to reconsider wholly unsecured claims cannot exist. Nevertheless, because the Court has found that the Cannons have failed to meet the "cause" standard of § 502(j), the Court need not further address whether the equities of the case mandate a reclassification of the Student Loan Claims under Rule 60(b). See *Anderson*, 545 B.R. at 180 (finding that reconsideration is only allowed when the equities of the case support reconsideration and cause has been shown). In summary, the Cannons have failed to show cause to reconsider the classification of their Student Loan Claims, and those claims must remain in their current class with the rest of the general, nonpriority unsecured Creditors. Therefore, the Cannons' proposed modification is not permitted under § 1329(a)(1), as it would result in unequal treatment of claims within the same class prohibited by § 1322(a)(3).[13]

---

180 (Bankr. N.D. Miss 2015) (stating that both law and equity require reconsideration where a secured creditor no longer has an interest in property of the estate).

[13] As a result of the Court's decision regarding reclassification of the Student Loan Claims at the modification stage, the Court need not assess § 1322(b)(1)'s unfair discrimination prohibition between classes of the Cannons' Creditors' claims because all the general unsecured Creditors will remain in the same class. The Court appreciates the parties' briefing on the issue, including the parties' legal positions regarding the two-part test adopted to evaluate what

  2. *§ 1329(a)(2)*

Even if the Court would have permitted the reclassification of the Student Loan Claims, the Cannons' modification does not fall under § 1329(a)(2). Section 1329(a)(2) allows modification to extend or reduce the time for payments under the plan. 11 U.S.C. § 1329(a)(2). Typically, § 1329(a)(2) is invoked when debtors face financial hardship and require additional time to complete their plan payments. That is clearly not the case here, as the Cannons are seeking to alter the amount to be paid under the Plan based on the nonexempt settlement proceeds and receive a discharge now.

Some courts have reasoned that because early payment[14] of the amount designated to be paid under the plan does not change the substantive terms of the plan, it is an acceleration, not a modification under § 1329. *In re McCollum*, 48 B.R. 377, 389 (Bankr. E.D. La. 2006). While this "acceleration" view is not universally accepted, the Fifth Circuit Court of Appeals has endorsed the idea that an early payoff is not a modification. *Id.* (citing *Bayshore National Bank of Laporte v. Smith*, 252 F.3d 1357 (5th Cir. 2001) (noting that a debtor may use a lump sum to pay the full amount owed under the plan and receive a discharge, regardless of the number of payments made). Based on the Fifth Circuit's willingness to endorse the early payoff theory, the Court agrees that while paying all claims to the extent they would have been paid under the confirmed plan entitles a debtor to a discharge, this early payoff method does not constitute a modification. See *In re Childers*, 2015 WL 360120 at *2 (Bankr. N.D. Tex. 2015). Although the Court believes that the

---

constitutes "unfair discrimination" in the Fifth Circuit. That issue may very well come up again in the future should another debtor propose to classify his or her student loan claims separately and apart from other general unsecured claims either at confirmation or in a proposed modification.

[14] Early payment, or acceleration, occurs when a debtor tenders the payments owed to creditors under the confirmed plan prior to the conclusion of the plan term. See *In re Refosco*, 2013 WL 3489923 at 3* (Bankr. W.D. Penn. July 9, 2013).

Cannons' proposed modification is not actually a modification, as the *Childers* court noted, early payment *may* constitute a modification. *Childers*, 2015 WL 360120 at *3.

Even if the Cannons' proposal constitutes a modification, or if this Court were to reclassify the Student Loan Claims, the Student Loan Claims are still unsecured, and the Cannons' modification attempt would be unsuccessful under § 1325. Specifically, § 1325(b)(4)(B) is clear that an above median income debtor must maintain a bankruptcy plan for five years unless *all* unsecured creditors are paid in full. See *In re Mason*, 520 B.R. 508, 517 (Bankr. S.D. Miss. 2014) (emphasis added); 11 U.S.C. § 1325(b)(4)(B). Here, because the Cannons are above median income, the modification would not be permitted as the Cannons have not yet satisfied the five-year commitment period applicable to above median income debtors, nor are they proposing to pay *all* unsecured Creditors in full. Just the opposite: the Cannons want to exclude their largest unsecured Creditors, i.e., the Student Loan Creditors. The Cannons simply cannot escape § 1325(b)(4)(B)'s requirement to pay all unsecured Creditors, regardless of what class the Student Loan claims are in.[15]

3. *§ 1329(a)(3)*

To the extent applicable, the Cannons' proposed modification also does not fall under the purview of § 1329(a)(3). Section 1329(a)(3) allows a modification to offset the payments made to a creditor under the plan by the amount of any payments made outside of the plan. 11 U.S.C. § 1329(a)(3). While the term "payments made outside of the plan" and "payments made under a plan" are colloquially used in bankruptcy, they are not directly interchangeable. See *In re Villarreal*, 639 B.R. 427, 437 (Bankr. S.D. Tex. 2022). In the Fifth Circuit, a debtor's direct

---

[15] In addition, because the Cannons cannot reclassify the Student Loan Claims under §502(j), the Cannons' proposal of paying all other unsecured Creditors, while excluding Student Loan Creditors, would not be permitted. See 11 U.S.C. § 1322(a)(3).

payment to a creditor does not constitute "payments made outside of the plan". *Id.* In fact, the only applicable sources of outside payments include payments from third parties such as co-debtors, sureties, guarantors, or the reclamation or disposition of collateral. *Id.* (citing COLLIER ON BANKRUPTCY ¶ 1329.04[3] 16th ed.).

In this case, however, the Cannons are not seeking to make payments to their Student Loan Creditors outside of the Plan. Instead, the Cannons seek to receive a discharge and resume payments to the Student Loan Creditors after completion of the Plan in hopes that they eventually qualify for loan forgiveness under PSLF. Even if the Cannons proposed to make direct payments to the Student Loan Creditors prior to the Plan's conclusion, these payments would still constitute payments made "under the plan".[16] Therefore, the Cannons have failed to propose any scenario in which the Student Loan Creditors would receive payments outside of the plan. Accordingly, the Court does not believe that the Cannons have provided sufficient justification for excluding the Student Loan Creditors from receiving disbursements from the nonexempt settlement proceeds. Because the Cannons' proposed modification does not involve payments made outside of the plan, and no further payments to the Student Loan Creditors at all, the Cannons cannot invoke § 1329(a)(3) to modify their Plan.

## IV. CONCLUSION

In conclusion, claim preclusion does not bar the Cannons from modifying their Plan, but the Cannons' modification attempt fails because they cannot reclassify the Student Loan Claims under § 502(j) due to the potential for student loan forgiveness through PSLF at some unknown point in the future. Because the Cannons cannot separately classify their Student Loan Claims, the

---

[16] Without sounding repetitive, the Court notes that for the Cannons to make direct payments to the Student Loan Creditors, their claims would likely require a separate classification to avoid violating the identical treatment requirement under § 1322(a)(3).

Cannons cannot modify their Plan under any subsection of 1329(a) due to the limiting provisions of the Bankruptcy Code—namely §§ 1322(a)(3) and 1325(b)(4)(B). Although the Bankruptcy Code *may* have permitted separate classification of the Student Loan Claims if proposed at confirmation had they satisfied the unfair discrimination standard contained in § 1322(b)(1) or at modification had the Rule 60(b) "cause" standard been satisfied in addition to § 1322(b)(1), that is simply not the case here. As a result of the Court's ruling in this Opinion and Order, the Student Loan Claims will remain in the same class as the rest of the general, unsecured Creditors, and the Student Loan Creditors must receive the same *pro rata* distribution as the other unsecured Creditors. Therefore, it is hereby **ORDERED** that the Cannons' *Motion to Modify* (Dkt. #137) is **DENIED**.

##END OF ORDER##